## FIRST STATE BANK OF GARRISON v. COMMERCIAL STATE BANK OF NACOGDOCHES.

### No. 1985.

Court of Civil Appeals of Texas. Beaumont.
Jan. 14, 1931.
Rehearing Denied.

Adams & McAlister, of Nacogdoches, for appellant.

A. T. Russell, of Nacogdoches, for appellee.

WALKER, J.

This was a suit by appellee against appellant on the following written contract:

"Whereas, the contracting firm of Latimer & Pursifull under contract with the proper authorities, in the State of Louisiana, built certain roads in Vernon Parish, said State, being projects No. 145C and have completed the same and same has been accepted by the proper authorities of said State, And, whereas, certain sums of money are due said Latimer & Pursifull from the Highway Department of said State for the completion of said work, the payment of a portion of which sum so due is held up and not paid by said Highway authorities because of claim made by John Thompson, against said Latimer & Pursifull for work done and material furnished in the building of said road of which claim amounting to $6,700.00, the said Highway department of the State of Louisiana has been duly notified.

"And, whereas, said John Thompson, is releasing the said Highway Department from any obligations or duty in paying said money to Latimer & Pursifull and is authorizing the payment to them so far as his rights are involved.

"And, whereas, the check or voucher to cover said amount will be sent to the First State Bank of Garrison, at Garrison, Texas, payable to Latimer & Pursifull from whom said Bank has authority to endorse the same to itself and collect.

"And, whereas, said John Thompson, has assigned his claim against the same amounting to $6,300.00 to the Commercial State Bank at Nacogdoches, Texas.

"Now, therefore, the First State Bank of Garrison, Texas, hereby binds itself and contracts and agrees with the said Commercial State Bank of Nacogdoches, Texas, to pay over to the said Commercial State Bank the sum of $6,300.00 as soon as same is collected, as above set out. Said amount of said fund being the property of the said Commercial State Bank, and said First State Bank of Garrison, Texas, will not authorize the said Highway Department to pay said money directly to Messrs. Latimer & Pursifull, or either of them, except through check sent to said First State Bank as heretofore done in the work of said project.

"[Signed] First State Bank, Garrison, Texas, J. W. Stalling, President."

The former appeal is reported, First State Bank v. Commercial State Bank (Tex. Civ. App.) 13 S.W.(2d) 714, where a full statement of the nature of the pleadings is given. On that appeal the judgment of the lower court was reversed on the ground that error was committed in sustaining exceptions to appellant's answer to the effect that the contract was entered into on the false statement that Latimer & Pursifull and Thompson had settled their differences and that Latimer & Pursifull were due Thompson $6,300. On this trial the issues raised by appellant's answer against the validity of the contract sued upon were as follows: J. W. Stalling, as president, had no authority to execute the contract; Latimer & Pursifull in fact owed Thompson nothing on the date the contract was entered into; all funds due by the Highway Department of Louisiana to Latimer & Pursifull had been assigned by them to appellant and were in fact owned by appellant.

The following were the only issues submitted to the jury, answered as indicated:

"Special Issue No. 1. Did John Thompson authorize Belton Lattimer to credit his estimates to H. R. Pursiful, to June 4th, 1926, in the sum of $5447.29?" To which the jury answered: "No."

"Special Issue No. 2. Did Belton Latimer and John Thompson come to an agreement that Thompson's lien for $6300.00 would be released by Thompson and the money forwarded through the First State Bank of Garrison to the Commercial State Bank at Nacogdoches?" To which the jury answered: "Yes."

"Special Issue No. 3. What amount of money, if any, did Pursiful & Lattimer owe John Thompson on the 4th day of June, 1926?" To which the jury answered: "$5447.29."

"Special Issue No. 4. What amount, if any, was Tom Baker authorized to pay Pursiful & Latimer for John Thompson?" To which the jury answered: "$84.00."

Stalling's authority to execute the contract was not submitted to the jury, nor did appellant ask that it be submitted. The issue is before us on the proposition advanced by appellant that under the undisputed evidence Stalling had no authority as president to execute the contract. The evidence raised the issues upon which the contract was based: That is: Latimer & Pursifull built certain roads in Vernon parish, La., for the highway department of Louisiana; on the date of the contract this work had been accepted by the highway department, and on the date of acceptance there was due Latimer & Pursifull on the work an amount in excess of the $6,300 named in the contract;

John Thompson was a subcontractor under Latimer & Pursifull on the work, and, when the work was accepted by the highway department, there was due Thompson by Latimer & Pursifull on his subcontract an amount fixed by the jury at $5,447.29, which was unpaid on the date of the contract. Prior to the date of the contract Thompson notified the highway department of his claim against Latimer & Pursifull, and on receipt of this notice the highway department refused to pay Latimer & Pursifull the balance due for the road work pending a final settlement between them and Thompson. Prior to the date of the contract, Thompson met both Latimer & Pursifull once and Latimer personally a second time in the office of appellee in the city of Nacogdoches, and an agreement was reached between them fixing the amount due by Thompson and that the amount should be paid from the funds held by the highway department. T. E. Baker testified as follows as to the terms of this agreement:

"At this time I am president of the Commercial Bank. On April 12, 1927, I was Vice-president of the Bank. I recollect having conversations with Mr. Latimer and Mr. Perciful about the money due Mr. Thompson that he was testifying about. I had two conversations with them. The conversations took place in the Commercial State Bank at Nacogdoches. If you want me to testify as to the date, give me the memorandum. It was about April, 1927. They discussed a road contract in Louisiana with Mr. Latimer, Mr. Perciful and Mr. Thompson. Mr. Perciful was not present at the second conversation; he was present part of the time at the first one, not all of the time, if I remember correctly. I went over that settlement with them. They discussed the work done and the failure to get the money to pay for it. The money had been tied up in La. with the State Highway Department, both were anxious to get the money released. Mr. Latimer and Mr. Perciful said that there was in the neighborhood of $500.00 more than the $6300.-00 tied up in La. It was agreed that $6300.00 was the amount of money due Mr. Thompson. They wanted to get the money released so that Mr. Thompson and Mr. Latimer agreed for all the money to come to the bank at Garrison and they would authorize the bank of Garrison to pay the $6300.00 to Mr. Thompson and the balance to Mr. Perciful and Mr. Latimer. Mr. Thompson was not willing that this money go to the Bank of Garrison until after they said they would pay the $6300.00 to the Commercial State Bank at Nacogdoches. He would not agree unless the Garrison bank would agree in writing that it would pay the $6300.00 to us. Up until then there was no understanding between our bank and Mr. Thompson and the Garrison bank."

The following facts appeared without con-

troversy: Appellant bank advanced money to Latimer & Pursifull to help them finance the building of the Vernon parish roads. To secure the bank in these advances they executed to the bank a written assignment of the funds due them for this work by the highway department of the state of Louisiana, authorizing the highway department to remit these funds direct to appellant. When Thompson released his claim against the money due by the highway department to Latimer & Pursifull, draft was forwarded to appellant for the balance of this fund, which was duly received by appellant, indorsed by its president, duly presented for payment, and payment made, and the proceeds thereof paid into the bank. On the date of the execution of this contract, Latimer & Pursifull owed appellant more than the amount of the draft forwarded to it by the highway department of Louisiana.

Appellant offered testimony to the effect that Stalling executed the contract without specific authority from its board of directors; they knew nothing of the existence of the contract until shortly before this suit was filed. Latimer testified, denying that he and Pursifull had made the settlement testified to by Mr. Baker; denying that Latimer & Pursifull owed Thompson any sum whatever. He testified further that the amount claimed by Thompson against Latimer & Pursifull was due only by Pursifull and not the partnership; that Thompson made a personal loan of this amount to Pursifull, thereby releasing his claim against the partnership.

■ The claim that Thompson released his debt against the partnership and made a personal loan of the amount due him to Pursifull was found against appellant by the jury's answer to question No. 1. By its answer to question No. 2 the jury found in favor of appellee on the issue that Latimer & Pursifull had agreed with Thompson upon the amount due him, to be paid by appellant from the money due by the highway department. By the answer to question No. 3, the jury fixed the amount due Thompson by Latimer & Pursifull at $5,447.29. It thus appears that every fact issue raised by the evidence, on the issue of Stalling's authority to make the contract, was found against appellant. Though not submitted to the jury, the evidence raised the issue that (quoting from Mr. Baker's testimony): "Mr. Thompson and Mr. Latimer agreed for all the money to come to the bank at Garrison and they would authorize the bank at Garrison to pay the $6,300.00 to Mr. Thompson and the balance to Mr. Pursifull and Mr. Latimer."

In support of the judgment we conclude, on this testimony, that the execution of the contract was duly authorized by Latimer & Pursifull.

■■ The remaining question raised by appellant is that the $6,300 had been assigned to it by Latimer & Pursifull, and therefore belonged to it. Being its property, as appellant construes the facts, it insists that Stalling had no authority to give the money away or contract it away without specific authority from its board of directors. This proposition rests upon an erroneous construction of the facts. The assignment to appellant from Latimer & Pursifull vested it only with such right as they had in the funds due by the highway department, which was secondary to the claim of Thompson, that is, as a subcontractor under Latimer & Pursifull, Thompson had a prior claim to be paid from the proceeds held by the highway department. Construed in the light of the testimony and the facts as found by the jury, the contract sued upon was nothing more than an agreement by appellant to collect funds belonging to Thompson and forward the same to appellee. As appellant's chief executive officer, which he was under appellant's by-laws, Stalling had the power and authority to make the contract as thus construed. It is well settled that a contract for the transmission of funds, being an important function of a commercial bank, can be executed by its chief executive officer without specific authority from its board of directors. Goshorn v. People's National Bank, 32 Ind. App. 428, 69 N. E. 185, 102 Am. St. Rep. 248.

■ Under its plea of non est factum, appellant insists by proposition E that appellee rested under the burden of showing that the contract was duly executed. Upon the statement made above it appears that this burden was fully discharged.

■ By proposition G appellant asserts error in the refusal of the trial court to submit to the jury the issue of appellee's right to recover interest. Interest was sued for eo nomine and not as damages, and therefore it followed as a matter of law. However, had appellee sued for interest as damages, the issue was not one of fact but of law. In Watkins v. Junker, 90 Tex. 584, 40 S. W. 11, 12, followed by the Supreme Court in Ewing v. Foley, 115 Tex. 222, 280 S. W. 499, 44 A. L. R. 627, and this court in Settegast v. Timmins, 6 S.W.(2d) 425, the Supreme Court said:

"If interest be properly an element of damages in any case, then it is so as a matter of law. * * * We think that it is an inconsistency to say that a right exists, which a jury may or may not enforce as they may deem proper."

By argument appellant insists that the date from which interest was calculated was erroneously fixed by the trial court, but this finding by the trial court is not attacked by a proposition.

Propositions H and I are not briefed except in so far as they present the proposition just discussed.

No effort was made to brief proposition F.

 Propositions B, C, and D are as follows:

"All issues when raised by testimony and the trial is to a jury must be passed upon by the jury."

"Hearsay testimony as well as self-serving is admissible at no time and becomes prejudicial to the rights of the complaining party when excepted to."

"Secondary evidence is only admissible after primary evidence is shown not to be available."

These propositions cannot be considered since they are too general, as held by us in Clevenger v. Burgess (Tex. Civ. App.) 31 S. W.(2d) 675, 677. Construing similar propositions in that case, we said:

"These assignments are the mere statements of abstract propositions of law, and do not point out any specific error. Not doing so, they are not sufficient and should not be considered."

It follows that the judgment of the trial court should be in all things affirmed, and it is accordingly so ordered.