FEDERAL DEPOSIT INSURANCE
CORPORATION, Appellant,

v.

TEXAS BANK OF
GARLAND, Appellee.

No. 05–88–01451–CV.

Court of Appeals of Texas,
Dallas.

Aug. 30, 1989.

Rehearing Denied Oct. 6, 1989.

Robert J. Clary and Phillip Adkins, Dallas, for appellant; Ann S. Duross, Gregory E. Gore, and Sharon Powers Silversten, Washington, D.C., of counsel.

James D. Bennett, Dallas, for appellee.

Before HOWELL, THOMAS and OVARD, JJ.

OVARD, Justice.

Texas Bank of Garland (TBG) sued Commerce Bank Plano (CBP) for wrongful dishonor of a written instrument, entitled "Irrevocable Letter of Credit Number 0056" (LOC) and signed by Sam Thomas as chief executive officer and chairman of the board of CBP. The Federal Deposit Insurance Corporation (FDIC) intervened after being appointed receiver for CBP. TBG and the FDIC both moved for summary judgment. The trial court granted TBG's motion for summary judgment, from which the FDIC appeals. The FDIC contends that the trial court erred, as a matter of law, in granting TBG's motion for summary judgment and denying the FDIC's motion for summary judgment. Points one through four are summarized as follows: (1) the LOC was not signed by CBP, since Sam Thomas had no actual or apparent authority to issue the LOC; and (2) the LOC was not a letter of credit, since Grant Curtis was not a customer under CBP's operating policy and since Sam Thomas did not follow said operating policy. We disagree. Accordingly, we affirm the trial court's judgment.

The facts of the case are derived from the trial transcript and are undisputed. On July 28, 1987, Grant Curtis personally de-

livered the LOC signed by Sam Thomas to TBG, naming TBG as the third-party beneficiary. The LOC, together with a pledged $200,000 certificate of deposit, was collateral for the renewal of a $300,000 note, payable to TBG by Curtis. The LOC reads:

Sam Thomas, III    Commerce Bank Plano
Chairman of the Board    P.O. Box 865499
Chief Executive Officer    Plano, Texas 75086

IRREVOCABLE LETTER OF CREDIT NUMBER 0056

DATE: JULY 28, 1987

FOR THE ACCOUNT OF: GRANT CURTIS
3008 Milton Avenue
Dallas, Texas 75205

TO BENEFICIARY: TEXAS BANK GARLAND
1919 S. Shiloh
Garland, Texas 75042

AMOUNT: $100,000.00

EXPIRATION: NOVEMBER 28, 1987

Gentlemen:

We hereby establish our irrevocable Letter of Credit in your favor, available by your draft at sight, on us, accompanied by this letter of Credit. All drafts must be marked: "DRAWN UNDER LETTER OF CREDIT # 0056."

This Letter of Credit is transferable without limitations as to the number of transfers or the number of transferees. Except as expressly stated herein, this Letter of Credit is governed by the Uniform Customs and Practices for Documentary Credits (198__ revision), International Chamber of Commerce Publication # 400.

We hereby engage with you, your transferees, endorsers, and assigns, that all drafts drawn under and in compliance with the terms of this Credit will be duly honored if drawn and presented for payment at our office at 901 W. Parker Road, Plano, Collin County, Texas, on or before 1:00 o'clock P.M., Plano, Texas time, not prior to October 28, 1987 and not subsequent to November 28, 1987.

This Letter of Credit can be renewed for an additional period of time if mutually agreed by both Texas Bank Garland and Commerce Bank Plano prior to maturity.

Sincerely,

/s/ Sam Thomas
Sam Thomas
Chairman of the Board
Chief Executive Officer

Curtis defaulted on the note, and on November 23, 1987, TBG presented the LOC, a letter of instruction, and a $100,000 draft drawn against the LOC, to CBP. On the same day as presentment, CBP notified TBG that it would dishonor the LOC. CPB provided TBG with a written notice of dishonor on November 24, 1987. On or about November 25, 1987, TBG sued CBP to recover under the LOC. In January 1988, the FDIC was appointed receiver of CBP. On or about February 5, 1988, the FDIC

filed a plea in intervention. Both parties filed motions for summary judgment in August 1988. The trial court rendered summary judgment for TBG on November 3, 1988.

Summary judgment is proper only where the movant shows there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986); TEX.R.CIV.P. 166a(c). If there is any genuine issue of material fact, the motion for summary judgment must be denied. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Where there are no disputed evidentiary matters, and both parties move for summary judgment, it is this Court's duty to consider all of the evidence, together with the motions, and decide which motion, if any, should be granted. *See Villarreal v. Laredo Nat'l Bank*, 677 S.W.2d 600, 605 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). We will use the above summary judgment standards in determining all of appellant's points of error. There are no disputed issues of material fact; therefore, we need only determine if TBG was entitled to summary judgment as a matter of law.

### 1. Thomas's Authority

The FDIC contends that the trial court erred in granting summary judgment in favor of TBG because Thomas had no actual or apparent authority to sign the LOC. The FDIC argues that the LOC was not issued by CBP but by Thomas personally.

■ A corporation can act only through its agents. *Upper Valley Aviation v. Mercantile Nat'l Bank*, 656 S.W.2d 952, 957 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). It is elementary that a bank is bound by the acts of its officers while acting in the scope of their authority, either actual or apparent. *Insurance Co. of N. Am. v. Fredonia State Bank*, 469 S.W.2d 248, 252 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r. e.).

#### a. Actual Authority

■ Actual authority can be either express or implied. *Id.* The record shows

that Thomas was denied actual authority to issue the LOC. However, even so, we sustain the trial court's judgment because the record conclusively establishes Thomas's apparent authority. *See id.* at 253.

#### b. Apparent Authority

■ The FDIC argues that Thomas did not have the apparent authority needed to issue the LOC, and that even if Thomas possessed the necessary apparent authority, TBG did not exercise reasonable due diligence to ascertain such authority. The doctrine of apparent authority to act as an agent is based on the law of estoppel. *Id.* But in every case, in order to create an estoppel, the authority to act must be based on the facts. *Id.* at 253. The doctrine does not apply unless the person dealing with the agent was misled by the representation or conduct of the principal. The person dealing with the agent must have been induced to act to his prejudice by reason of the principal's conduct, after exercising due diligence to ascertain the truth. *Id.; Butterworth v. France,* 66 S.W.2d 369, 370–71 (Tex.Civ.App.—Amarillo 1933, no writ). Apparent authority may arise by a principal's action which lacks such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority he purports to exercise. *Ames v. Great S. Bank,* 672 S.W.2d 447, 450 (Tex.1984).

■ Thomas was CBP's chief executive officer and chairman of the board. Appointing a person to such a position may, in itself, create apparent authority in an employee. *Rourke v. Garza,* 530 S.W.2d 794, 803–04 (Tex.1975). However, apparent authority in such cases exists only as to those things ordinarily entrusted to one occupying such a position. *Id.* Courts have held that lending money of a bank in the ordinary course of business is clearly within the scope of authority of a vice president and general manager of a bank. *Goldstein v. Union Nat'l,* 109 Tex. 555, 562, 213 S.W. 584, 591 (1919). *A fortiori,* appointing a person as an executive officer impliedly grants in him the authori-

ty to issue letters of credit. *See Insurance Co. of N. Am.,* 469 S.W.2d at 253. Moreover, a contract for the transmission of funds can be executed by a chief executive officer of a bank without specific authority from its board of directors. *First State Bank v. Commercial State Bank,* 34 S.W.2d 297, 300 (Tex.Civ.App.—Beaumont 1931, writ dism'd w.o.j.). As TBG's senior vice president for loans testified, "Someone who is chairman of the board and chief executive officer would certainly have the power to issue a letter of credit."

We hold that issuing a letter of credit is within the scope of apparent authority ordinarily entrusted to the chief executive officer of a bank. Thomas had the apparent authority necessary to act as an agent for his bank in issuing the LOC to Curtis.

■ We will now turn to the question of whether TBG exercised due diligence in ascertaining whether Thomas possessed the necessary apparent authority to issue the LOC. Due diligence is sufficient when it is shown that persons are dealing with bank officers in good faith, without notice of want of authority, and when the officer appears to be acting within the apparent scope of his authority. *Insurance Co. of N. Am.,* 469 S.W.2d at 253. In a prior transaction, a TBG officer ascertained that Thomas was the chief executive officer and chairman of the board for CBP. Thomas continued in this position on the date that the LOC was issued to Curtis. In addition, an officer of TBG examined the Texas Banking Red Book, a reference manual for the banking industry, and verified Thomas's position with CBP. We hold that TBG exercised due diligence under these facts and that Thomas had the apparent authority to issue the LOC.

#### c. Definition of Letter of Credit

■ Additionally, the FDIC complains that the LOC did not have an authorized signature by CBP and, therefore, did not meet the definition of a letter of credit as provided by the Texas Business and Commerce Code (UCC). Chapter 5 of the UCC, provides in pertinent part:

§ 5.102.

(a) This chapter applies

....

(3) to a credit issued by a bank or other person if the credit ... conspicuously states that it is a letter of credit or is conspicuously so entitled.

....

§ 5.103 Definitions

(a) In this chapter unless the context otherwise requires

(1) "[L]etter of credit" means an engagement by a bank or other person made at the request of a customer ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit.... The engagement may be either an agreement to honor or a statement that the bank or other person is authorized to honor.

....

(3) An "issuer" is a bank *or other person* issuing a credit.

TEX. BUS. & COM. CODE ANN. §§ 5.102–03 (Tex. UCC) (Vernon 1987) (emphasis added). We read this definition to indicate that the word "issuer" is to be broadly construed.

The LOC is conspicuously entitled "Letter of Credit Number 0056." Thomas, as agent for CBP and, at the request of bank customer Curtis, issued a statement that CBP would honor demands for payment upon compliance with the conditions specified in the LOC. We have determined that Thomas had apparent authority to sign and issue the LOC. If Thomas had apparent authority to sign and issue the LOC, the signature was authorized. *See La Sara Grain Co. v. First Nat'l Bank,* 673 S.W.2d 558, 562 (Tex.1984). Therefore, the LOC meets the definition of a letter of credit under the Texas UCC.

### *d. Public Policy*

■ The FDIC also contends that it is against public policy to view the LOC as a letter of credit because the entire U.S. banking system could be jeopardized if officers of banks could personally authorize uncollateralized loans. We point out that CBP controlled the appearance of Thomas's

authority. In our view, it would be more harmful to fail to protect an innocent third party, properly relying on the apparent authority of the CBP's agent, than to hold the principal liable for the actions of the agent under CBP's control. *See Southline Equip. v. National Marine Serv., Inc.,* 598 S.W.2d 340, 343 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ); *First State Bank,* 34 S.W.2d at 300. We determine that public policy dictates that a principal be held liable for the actions of an agent, when it exercises control over such agent, who has the apparent authority to transact business with innocent third parties.

### 2. CBP's Operating Procedures
#### *a. Curtis as Customer*

■ The FDIC argues that the trial court erred in granting summary judgment in favor of TBG because Grant Curtis was not a "customer" under CBP's operating policy. FDIC contends that Curtis was not a customer because CBP has no record of Curtis making an application or paying a fee for a letter of credit.

In order for a letter of credit to issue, CBP had a policy requirement that: (1) a customer submit a signed application; (2) the letter of credit be fully collateralized; (3) a fee be collected; and (4) all applications be approved by the board of directors. CBP's records reflected that these requirements were not met by Curtis and Thomas. The UCC defines customer as a buyer *or other person* who causes an issuer to issue a credit. TEX. BUS. & COM. CODE ANN. § 5.103(a)(7) (Vernon 1987).

Although CBP had no record of an application or fee from Curtis for the LOC, it is uncontroverted that on July 28, 1987, Curtis was indebted to CBP for $512,604 and maintained an overdrawn deposit account with CBP. Thus, it is doubtful that CBP, on that date, would have proclaimed that Curtis was not a bank customer who owed the debt.

The FDIC concedes in its memorandum in support of motion for summary judgment that Curtis and Thomas caused the LOC to issue. Curtis had exclusive posses-

sion of the letter and personally delivered it to TBG on July 28, 1987. The LOC stated "For the Account of: Grant Curtis" on the face of the LOC and was used as collateral to renew a $300,000 note, payable to TBG by Curtis. We conclude that the evidence established that Curtis was a customer of CBP, causing the LOC to issue.

### b. Thomas as Agent

The FDIC further argues that CBP's operating policy prohibited Thomas from issuing the LOC and that Thomas did not follow CBP's policy requirements. An agent's authority is presumed to be coextensive with the business entrusted to his care. *Southline,* 598 S.W.2d at 343. That authority is not diminished at the expense of a third party by private instructions or limitations imposed by the principals, which are not communicated to third parties dealing with the agent. *Id.*

There is no evidence that CBP communicated its letter of credit policy, or any of the limitations placed on Thomas, to its customers or the banking community. We hold that, before FDIC is entitled to rely upon those policies to diminish an agent's apparent authority, it was CBP's responsibility to communicate its operating policies to the banking public. TBG, as a third-party beneficiary, had no notice of these policies or limitations and was allowed to rely on the validity of Thomas's signature. The chief executive officer and chairman of the board of CBP had the apparent authority to sign and to issue the LOC. *See First State Bank of Garrison,* 34 S.W.2d at 300. We overrule the FDIC's points of error one through four.

### 3. Federal Common Law

In its fifth and sixth points of error, the FDIC contends that the trial court erred in rendering summary judgment because federal common law bars recovery by TBG and mandates summary judgment for FDIC. FDIC relies on the holding in *D'Oench Duhme and Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). *D'Oench* was a case involving the maker of an accommodation note. The Supreme Court held that the maker was estopped from taking advantage of an unintentional fraudulent transaction, that he made possilbe. The maker was responsible for the false status of the note, and therefore, could not claim estoppel. We note that *D'Oench* does not address demands on letters of credit by third-party beneficiaries against the FDIC as the receiver for a state bank, and we are not persuaded that *D'Oench* applies to this case.

We have, however, found other cases regarding letters of credit in which the FDIC is receiver and are persuaded that these cases properly address this issue. We can find no statutory or case authority affording the FDIC any special privileges as the receiver of a state bank. To the contrary, in letter of credit cases, if there is a wrongful dishonor of a draft, the FDIC "stands in the shoes" of the bank and does not enjoy any greater rights than the bank. *Tosco Corp. v. FDIC,* 723 F.2d 1242, 1246–47 (6th Cir.1983); *First Empire Bank v. FDIC,* 572 F.2d 1361, 1367–68 (9th Cir.1978). If there is strict compliance with the terms of a letter of credit by the beneficiary, then the issuer has no option other than to pay the beneficiary according to the terms of the letter. *Westwind Exploration v. Homestate Sav. Ass'n,* 696 S.W.2d 378, 381 (Tex.1985). Therefore, the FDIC, as receiver for CBP, has the same responsibilities that CBP had to honor its letters of credit. Points of error five and six are overruled.

In conclusion, we hold that after considering all of the evidence and the motions, the LOC was a letter of credit; Thomas had the apparent authority to sign and issue the LOC; and federal common law does not bar TBG's recovery because TBG strictly complied with the terms of the LOC.

Consequently, we affirm the judgment of the trial court.