**AGRI EXPORT COOPERATIVE, Plaintiff,**

and

**Bankers Trust Company, Plaintiff-in-Intervention,**

v.

**UNIVERSAL SAVINGS ASSOCIATION, Defendant,**

and

**Resolution Trust Corporation as Receiver for Universal Savings Association, Defendant-in-Intervention.**

Civ. A. No. H–89–1193.

United States District Court, S.D. Texas, Galveston Division.

May 3, 1991.

Amended Memorandum Opinion May 21, 1991.

R. Allen Ashcraft, Jr., Harris & West-moreland, Houston, Tex., for plaintiff.

Joseph A. Kral, Kniepa & Kral, Houston, Tex., for defendant.

Mary Lou Leyh, Baker, Brown, Sharman & Parker, Houston, Tex., for intervenor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HUGH GIBSON, District Judge.

This action was brought by the plaintiffs Agri Export Cooperative and Bankers Trust Company to enforce payment on a letter of credit issued by Universal Savings Association. The case was tried to the Court on March 26, 1991. The following Findings of Fact and Conclusions of Law are made pursuant to Fed.R.Civ.P. 52.

*Findings of Fact*

1. On February 14, 1986 James Purdom, President of Universal Savings Association, executed "Letter of Credit No. 70" in favor of Agri Export Cooperative, in the amount of "up to an aggregate of one million dollars" payable upon the default of a referenced promissory note executed by

American Terminal Corporation. By it's own terms, the letter was irrevocable with an expiration date of February 14, 1987. The letter of credit provided that the controlling law in case of disputes would be the Uniform Customs and Practices for Documentary Credits (UCP).

2. James Purdom was expressly authorized to make loans, without further approval from Universal's Board of Directors.

3. The terms of the letter of credit provided for payment upon the presentment of a draft, an affidavit certifying the default of the referenced promissory note, and the original of the letter of credit.

4. On January 13, 1987 Agri Export demanded payment under the letter of credit and presented a sight draft in the amount of one million dollars, the original of the letter of credit, and a certification of default on the underlying loan. Universal Savings Association refused payment, and did not communicate to Agri Export the reason for non-payment.

5. A letter signed by Universal Savings' Vice President Michael Blanchard stated that the terms of Letter of Credit would be extended to April 30, 1987 "in consideration of [Agri Export's] forbearance ... in bringing action against Universal for its alleged failure to honor the letter of credit No. 70 January 23, 1987."

6. On March 2, 1987, Agri Export again demanded payment and presented to Universal a sight draft, a copy of the letter extending Letter of Credit No. 70's expiration date to April 30, 1987, and an affidavit certifying default on the underlying loan. Universal Savings again refused payment, and again did not notify Agri Export as to the reason for non-payment.

7. Agri Export and Bankers Trust had no knowledge of, or participation in, any purported non-compliance by Universal with the Rules adopted under the Texas Savings and Loan Act.

8. On May 22, 1987, Agri Export assigned to Bankers Trust all of its rights, title and interest in and to the letter of credit.

*Conclusions of Law*

1. Any claim by Universal that presentment was improper was waived when Universal Savings failed to timely notify Agri Export as required by the UCP. UCP art 16.

2. James Purdom had actual express authority from Universal's Board of Directors to execute loans without further approval.

3. James Purdom had apparent authority to issue Letter of Credit No. 70. *See Federal Deposit Ins. Corp. v. Texas Bank of Garland,* 783 S.W.2d 604 (Tex.App.— Dallas 1989, no writ).

4. Universal's unilateral misconduct does not defeat Agri Export and Bankers Trust's claim. *Id. See also Federal Sav. & Loan Deposit Ins. Corp. v. Kennedy,* 732 S.W.2d 1 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

5. The rights and obligations of the underlying contract are not at issue since a bank that issues a letter of credits acts as a principle, not as an agent of the account party, and it engages its own credit. *Republic Nat'l Bank of Dallas v. Northwest Nat'l Bank of Fort Worth,* 578 S.W.2d 109, 114 (Tex.1978).

6. The extension of the credit executed by Universal's vice president was given in consideration for Agri Export's forbearance.

7. The *D'Oench, Duhme* doctrine is not applicable to the facts in this case because there was no secret or "side agreement", nor involvement in a scheme that was designed to deceive, or would tend to have the effect of deceiving, banking regulatory authorities.

8. 12 U.S.C. sec. 1823(e) is not applicable to the facts in this case because there was no asset of the Resolution Trust Corporation which the plaintiff is attempting to defeat.

9. Agri Export properly presented a valid letter of credit in compliance with the terms of the letter of credit and the letter of credit was in full force and effect on the date presentment was made.

10. Universal breached the terms of the letter of credit and wrongfully dishonored the sight draft for one million dollars.

11. Agri Export and Bankers Trust are entitled to recover one million dollars.

12. Plaintiffs are entitled to post-judgment interest. 28 U.S.C. sec. 1961.

13. Plaintiffs are entitled to pre-judgment interest. *Federal Deposit Ins. Corp. v. Philadelphia Gear Corp.*, 476 U.S. 426, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986).

14. Plaintiffs are entitled to attorneys fees and costs.

15. If any of the foregoing findings of fact constitute conclusions of law, they are adopted as such. If any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.

## AMENDED MEMORANDUM OPINION

The memorandum opinion filed by the Court on May 3, 1991 is hereby withdrawn and this amended memorandum opinion, containing no substantive changes, is issued to correct minor clerical errors.

Plaintiff Agri Export Cooperative, and plaintiff-in-intervention Bankers Trust Company instituted this civil action to enforce a letter of credit issued by Universal Savings in favor of Agri Export. Universal Savings is now under Resolution Trust Corporation receivership. Bankers Trust is assignee of all Agri Export's rights, title and interest in and to the letter of credit. In this action, Agri Export and Bankers Trust allege that, despite proper presentment, Universal wrongfully dishonored the letter of credit. The Resolution Trust Corporation as receiver denies liability contending that: 1) presentment of the letter of credit was improper; 2) the letter of credit was void because neither the underlying contract nor the extension of the letter of credit were supported by consideration; 3) the letter of credit was invalid because it was executed by the savings and loans association president without proper authority; and 4) the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e) bar recovery since the letter of credit was neither approved by Universal Savings Board of Directors nor properly recorded in Universal's records.

*Facts*

On February 14, 1986, James Purdom, the President of Universal Savings Association, executed "Universal Savings Association Letter of Credit No. 70" in favor of Agri Export Cooperative to insure payment on a promissory note. The promissory note was in consideration for a loan by Agri Export to a subsidiary of Universal Savings. By its own terms, the letter of credit was irrevocable with an expiration date of February 14, 1987, and provided that Universal Savings would pay Agri Export "up to an aggregate" of one million dollars upon the default of a loan made by Agri Export to American Terminal Corporation.

On January 23, 1987 Agri Export presented to Universal a sight draft in the amount of one million dollars together with the original of Letter of Credit No. 70 and a certificate verifying default on the underlying loan. Universal refused payment without explanation, and retained the original of the letter of credit. Subsequently, in a letter signed by Universal's Vice President Michael Blanchard, the expiration date of the letter of credit was extended to April 30, 1987 "in consideration of [Agri Export's] forbearance ... in bringing an action against Universal for its alleged failure to honor the letter of credit No. 70 January 23, 1987."

After the underlying loan again fell into default, on March 2, 1987 Agri Export presented to Universal another sight draft for one million dollars together with a certificate of default, a photocopy of Letter of Credit No. 70, and a photocopy of the letter extending the expiration date to April 30, 1987. Universal again refused payment. Agri Export filed suit for wrongful dishonor against Universal Savings in the 169th Judicial District Court of Harris County, Texas on March 25, 1987. The Federal Savings and Loan Insurance Corporation became conservator for Universal in March, 1988 and removed this action to Federal Court on April 10, 1989. The Reso-

lution Trust Corporation took over Universal's assets in August, 1989.

*Presentment*

Universal Savings contends that Agri-Export's presentment was improper because two presentment requirements, expressly provided for on the face of the letter of credit, were not satisfied: 1) Agri Export failed to present the original of the letter of credit or the original of the extension letter at the time payment was demanded; and, 2) the certification of default executed by the President of Agri Export and delivered to Universal upon presentation identified the underlying note as one "payable to Agri-Export" rather than "payable to the order of Agri Export."

Under applicable Texas law, an issuer's liability for payment under a letter of credit is contingent upon proper presentment by the beneficiary. Tex.Bus. & Com.Code Ann. § 5.114(a); *Westwind Exploration v. Homestate Savings Ass'n*, 696 S.W.2d 378, 381 (Tex.1985). To be proper, presentment must comply with the terms of the credit. Tex.Bus. & Com.Code § 5.114(a). The Texas cases indicate that the beneficiary of a letter of credit must strictly comply with the conditions of payment before he is entitled to receive payment thereunder. *Temple-Eastex Inc. v. Addison Bank*, 672 S.W.2d 793, 795 (Tex.1984).

■ Agri Export presented the original of Letter of Credit No. 70 for payment on January 23, 1987. It is undisputed that Universal Savings retained the original after this presentment. Universal's action, therefore, prevented Agri-Export from presenting the original letter of credit when requesting payment on March 2, 1987. Although the terms of Letter of Credit No. 70 explicitly required presentment of the original, the extension letter contained no such requirement. Agri Export was not compelled to present the original of the extension letter, since such presentation was not an explicit requisite for payment, and to the extent that Universal argues that the original letter was necessary, the original was already in Universal's files. Similarly, the discrepancy between the language on the affidavit presented to Universal ("payable to") and that used in the letter of credit ("payable to the order of") was probably insufficient to justify dishonor. There is no prohibition against including a provision in a letter of credit that specifically sets out the precise form of any demand, along with a provision that makes the demand in the specified form a condition of the issuer's obligation to pay. *Temple-Eastex*, 672 S.W.2d at 798; *First Bank of Rowlett v. Paris Sav. & Loan Ass'n*, 756 S.W.2d 329, 331 (Tex.App.—Dallas 1988, no writ). However, what constitutes strict compliance with the terms of the letter of credit will depend upon the language used. *Id.* Letter of Credit No. 70 may be construed as requiring only that the certificate from the Agri officer clearly identify the underlying promissory note with certainty, and not necessarily require that the term "payable to the order of Agri" appear in the affidavit. Since it is not disputed that the note identified in the certification is the same note on which the letter of credit was premised, and the documentation presented clearly identified the note at issue, the proper wording may not have been a condition for payment. *See New Braunfels Nat'l Bank v. Odiorne*, 780 S.W.2d 313, 318 (Tex.App.—Austin 1989, no writ); *Temple-Eastex, Inc. v. Addison Bank*, 672 S.W.2d 793 (Tex.1984).

■ Notwithstanding, even if both of Universal's claims concerning improper presentment are true, Universal Savings is barred from asserting them now. Letter of Credit No. 70's terms set forth that the controlling law for any disputes concerning payment on the letter shall be the Uniform Customs and Practices for Documentary Credits (UCP), except when the UCP conflicts with the laws of Texas or the United States. The UCP requires the issuer of a letter of credit to give notice of its decision to refuse the documents and to state the discrepancies. UCP Article 16(d). The UCP further provides that if the issuing bank does not act in accordance with the notice requirements, the bank shall be precluded from claiming that the documents are not in accordance with the terms and conditions of the credit. UCP Article 16(e).

The Uniform Customs and Practices provisions are controlling. Universal Savings did not comply with UCP notice requirements, and may not now complain of improper presentment.

*Letter of Credit Validity*

The Resolution Trust Corporation contends that the letter of credit is legally void, and hence unenforceable, because of a failure of consideration on the underlying loan, and a lack of consideration for the additional time granted in the extension letter. The RTC additionally claims that Universal's President James Purdom executed Letter of Credit No. 70 without approval of Universal's Board of Directors, and the letter of credit was therefore issued without authority and in violation of the Texas Savings and Loan Act. *See* Tex. Rev.Civ.Stat.Ann. art. 852a (1964 & Supp. 1991).

■ Neither of Universal's arguments based on lack of consideration are well grounded. The rights and obligations of the underlying contract are not at issue. A bank that issues a letter of credit acts as a principal, not as an agent of the account party, and it engages its own credit. *Republic Nat'l Bank of Dallas v. Northwest Nat'l Bank of Fort Worth*, 578 S.W.2d 109, 114 (Tex.1978). Thus, upon issuance of a credit, the bank assumes a primary obligation independent of the underlying contract and engages that it will pay upon the presentation of documents required by the instrument. *Id. See also, Barclay's Bank D.C.O. v. Mercantile Nat'l Bank*, 481 F.2d 1224 (5th Cir.1973). The contention that Universal received no consideration for the extension of the letter of credit is not supported by evidence. The extension letter specifically recounts, and other evidence indicates, that the extension was granted in consideration for Agri Export's forbearance in bringing action against Universal for its failure to honor Letter of Credit No. 70.

To ascertain if James Purdom's execution of the letter of credit was without authority requires application of Texas agency law principles to the circumstances surrounding the execution of the letter of credit. In Texas the authority to manage a corporation's affairs is vested in its board of directors, and the authority of the president to contract in its behalf must be found either in specific statutes, in the organic law of the corporation, or in a delegation of authority from the board of directors. *Templeton v. Nocona Hills Owners Ass'n*, 555 S.W.2d 534, 537 (Tex.Civ.App.—Texarkana 1977, no writ). The president has no inherent power by virtue of his office to bind the corporation except as to routine matters arising in the ordinary course of business. *Id.* at 558. These principles apply to presidents of financial institutions as well as to presidents of corporations generally. *See, Capital Bank v. American Eyewear, Inc.*, 597 S.W.2d 17, 20–21 (Tex. Civ.App.—Dallas 1980, no writ). *See also* Tex.Rev.Civ.Stat.Ann. art. 852a, sec. 3.01 (Texas Sav. & Loan Act sec. 3.01). However, a corporation can act only through its agents. *Upper Valley Aviation, Inc. v. Mercantile Nat'l Bank*, 656 S.W.2d 952, 957 (Tex.App.—Dallas 1983, writ ref'd n.r. e.). It is elementary that a bank is bound by the acts of its officers while acting in the scope of their authority, either actual or apparent. *Insurance Co. of N. Am. v. Fredonia State Bank*, 469 S.W.2d 248, 252 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r. e.).

Universal's files contain no Board of Directors' minutes reflecting specific approval for the issuance of the letter of credit. A solitary document, entitled "Loan Memorandum", purporting to show that Universal's loan committee approved the letter of credit was offered. However, contradictory evidence left unsettled whether this document pertains to Letter of Credit No. 70, or instead was prepared at a later date for an entirely different letter of credit. The contents of the document itself indicates that the loan memorandum was not related to the execution and issuance of Letter of Credit No. 70 because it includes references to two individuals—Paul Giddens, who was not employed by Universal until he became its president in October of 1986, and John Orton, who began performing legal services for Universal in the Fall of 1986—who could not have been involved

in the approval of a letter of credit issued in February of 1986.

■ The minutes from Universal's June 15, 1984 Board of Director's meeting indicate James Purdom needed approval from the entire loan committee or Board of Director only for loans in excess of one million dollars. No evidence was offered that indicates the extent of authority granted to James Purdom for executing letters of credit, and no evidence indicates that James Purdom was denied authority to approve loans or letters of credit in amounts of one million dollars or less. From the scant documentary evidence available, it is difficult to say with certainty whether James Purdom had express authority to approve Letter of Credit No. 70. However, since Universal's vice president approved an extension of this credit, it may be inferred that James Purdom did have such actual authority.

■ Even without actual authority to execute the letter of credit, apparent authority may arise by a principle's action which lacks such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority he purports to exercise. *Ames v. Great S. Bank,* 672 S.W.2d 447, 450 (Tex.1984). Texas courts have long held that lending money of a bank in the ordinary course of a business would be within the authority of the bank's officers. *See Goldstein v. Union Nat'l Bank,* 109 Tex. 555, 562, 213 S.W. 584, 591 (1919). It also has been held that issuing a letter of credit is within the scope of apparent authority ordinarily entrusted to a chief executive officer of a bank. *Federal Deposit Ins. Corp. v. Texas Bank of Garland,* 783 S.W.2d 604, 607 (Tex.App.—Dallas 1989, no writ).

■ The RTC argues that Universal Savings did not strictly comply with the substantive and procedural rules authorized by and promulgated in accordance with the Texas Savings and Loan Act, and contends that strong public policy considerations should compel the Court to hold that the letter of credit is invalid. The Rules and Regulations of the Savings and Loan Department set out certain bookkeeping and procedural rules for various activities that savings and loans associations typically engage in, including the issuance of letters of credit. However, Universal's bookkeeping and procedural errors, and it own internal non-compliance with the rules, does not defeat Agri Export's claim. An agent's authority is presumed to be coextensive with the business entrusted to his care ... and that authority is not diminished at the expense of a third party by private instructions or limitations imposed by the principles, which are not communicated to third parties dealing with the agent. *Southline Equip. Co. v. National Marine Serv., Inc.,* 598 S.W.2d 340, 343 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ).

In a Texas case involving a claim against a bank under Federal Deposit Insurance Corporation receivership for wrongful dishonor of a letter of credit, the court held that before the FDIC is entitled to rely upon operating policies and procedures to diminish an agent's apparent authority, it was the bank's responsibility to communicate its operating policies to it customers. *Texas Bank of Garland,* 783 S.W.2d at 609. The third party beneficiary in *Texas Bank of Garland,* like Agri Export, had no notice of any policies or other limitations, and was allowed to rely on the validity of the bank officer's signature. *Id.* In balancing different public policy objectives, the court concluded, "it would be more harmful to fail to protect an innocent third party, properly relying on the apparent authority of the [bank's] agents, than to hold the principle liable for actions of the agent under the [bank's] control ... We determine that public policy dictates that a principle be held liable for the actions of an agent, when it exercises control over such agent, who has the apparent authority to transact business with innocent third parties." *Id.* at 608.

### D'Oench Doctrine

The RTC contends the *D'Oench* doctrine and 12 U.S.C. § 1823(e) bar recovery by the plaintiff because there is no proper record of the approval and issuance of the letter of credit in the books and records at Uni-

versal. The *D'Oench* doctrine and 12 U.S.C. § 1823(e) are similar but not identical. Both plaintiff and defendant have presented arguments relating to whether or not the circumstances involved with Letter of Credit No. 70 fall within exceptions to *D'Oench* or § 1823(e). However, a threshold question is: does either *D'Oench* or § 1823(e) apply at all to a letter of credit issued by a failed savings and loan association. The Resolution Trust Corporation argues that letters of credit have been determined to be the type of "agreement" which falls under the veil of *D'Oench* and § 1823(e), however all cases cited by the RTC pertained to letters of credit which were assets of the failed institution, not those, as with the case at bar, which were obligations of the issuing savings and loan association. *See Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1107 (11th Cir.1990).

The doctrine of federal common law which has been the cornerstone of protection for bank insurers was enunciated in *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In *D'Oench*, a securities firm executed a series of notes under an agreement with bank personnel that the notes would never be collected. The sole purpose of the notes was to allow the bank to show "good" assets on its books. *Id.* at 454, 62 S.Ct. at 678. The bank gave the company a receipt which stated that each note was "given with the understanding it will not be called for payment. All interest payments to be repaid." *Id.* It was not until after the bank had failed and the notes had been acquired by the FDIC through a purchase and assumption transaction that the FDIC learned of the receipts stating that the loans would never have to be repaid. When the FDIC sued to collect on the notes, the defendant raised the side agreement and also asserted that the notes were invalid because they had been given without consideration.

The Supreme Court, after examining the statutory scheme that created the FDIC, concluded that the statute evidenced a federal policy to protect the FDIC and the public against misrepresentations as to the assets of insured institutions. *Id.* at 457, 62 S.Ct. at 679. In order to effect this federal policy, the Court fashioned a common law rule of estoppel precluding a borrower from asserting against the FDIC defenses based upon secret or unrecorded "side agreements" that altered the terms of facially unqualified obligations. The court considered it irrelevant that D'Oench, Duhme and Company was not guilty of violating any statute. *Id.* at 457, 62 S.Ct. at 679. Rather, it was not the borrower's intent but his conduct which allowed the bank to overstate its assets and resulted in the bank examiners being deceived. The basic *D'Oench* "test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect" *Id.* at 460, 62 S.Ct. at 681.

The *D'Oench* doctrine has been considerably extended by the courts since the 1942 decision. *Beighley v. Federal Deposit Ins. Corp.*, 868 F.2d 776, 784 (5th Cir.1989). *See also In re CTS Truss, Inc.*, 859 F.2d 357, 362 (5th Cir.1988). Federally insured savings and loan associations, in addition to insured banks, have for many years come within the purview of the doctrine. *Federal Sav. & Loan Ins. Corp. v. Kearney Trust Co.*, 151 F.2d 720 (8th Cir.1945). The doctrine now applies to the insuring institutions as receivers. Additionally, under *D'Oench* the courts have protected these entities not only from secret and misleading schemes, but have created a quasi-holder-in-due course status whereby, if the insurer purchases a note in a good faith transaction without knowledge of any wrongdoing involving the note, the insurer and its successors have a complete defense against, *inter alia*, claims of state and common law fraud, violation of state or federal securities laws, and the affirmative defenses of waiver, estoppel, unjust enrichment, failure of consideration and usury. *See Vernon*, 907 F.2d at 1106.

■ While the borrower in *D'Oench* knowingly participated in a fraudulent scheme, the doctrine is routinely applied even when the borrower does not intend to deceive banking authorities, and the underlying transaction need not be fraudulent to

defeat a borrowers claims. *See Beighley* 868 F.2d at 784; *Bowen v. Federal Deposit Ins. Corp.,* 915 F.2d 1013, 1016 (5th Cir. 1990). The borrower need only have "lent himself to a scheme or arrangement" whereby banking authorities are likely to be misled. *D'Oench, Duhme & Co.* 315 U.S. at 460, 62 S.Ct. at 680–81; *Federal Deposit Ins. Corp. v. McClanahan,* 795 F.2d 512, 517 (5th Cir.1986); *Beighley,* 868 F.2d at 784.

■ At bar we have a plaintiff who did nothing that can be construed as participation in any type of scheme or arrangement whereby banking authorities were likely to be mislead. There were no "secret" or "side" agreements of any kind, much less of a nature that would mislead banking authorities. Agri Export presents us with a rather straight-forward obligation of the bank, and the RTC wants the Court to deem this a "secret" agreement merely because the savings association utilized poor record keeping procedures. *D'Oench* simply does not apply.

Furthermore, it is unlikely that *D'Oench* applies when the agreement that the insuring institution is trying to nullify is what might be characterized as a pure obligation of the failed bank or savings and loan association. *D'Oench* is typically employed in instances where a side agreement is inextricably entwined with a loan or other asset of the financial institution. In the instant case the RTC wishes to avoid liability on an obligation that is not in any way connected with a particular asset of Universal Savings. The RTC contends *D'Oench* should be applied when any unrecorded agreement defeats the general assets of the insuring institution. Although the Fifth Circuit has not directly addressed this issue, the Eleventh Circuit was asked to extend the *D'Oench* doctrine to shield "all assets, whether actually possessed or receivable, acquired by a federal insurer or its successor in interest from all claims tending to diminish those assets, save those claims clearly supported by the records of the insolvent bank." *Vernon,* 907 F.2d 1101, 1106. The Court, while admitting that "the expansion of the *D'Oench* doc-

trine ... might well further the background goal of favoring and facilitating the purchase and assumption of insolvent banks over liquidation", refused to expand *D'Oench. Id.* Numerous courts recognize that *D'Oench* operates to bar both defenses and affirmative claims for relief. *See Chatham Ventures, Inc. v. Federal Deposit Ins. Corp.,* 651 F.2d 355, 359, *cert. denied* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1981) (analysis using sec. 1823(e)). Several District Court cases have held that *D'Oench* may be applied even if no particular assets of the financial institution are involved when there is a secret arrangements likely to mislead banking authorities. *See, e.g., Royal Bank of Canada v. Federal Deposit Ins. Corp.,* 733 F.Supp. 1091 (N.D.Tex.1990) ("side agreement" between two banks involved in a loan participation arrangement). Universal's Letter of Credit No. 70 was not such an agreement when executed; it was not intended to deceive, nor likely to deceive, banking authorities.

■ Even if the *D'Oench* doctrine could somehow be applicable to a letter of credit issued by a failed savings institution and its execution could somehow be characterized as a "secret" or "side" agreement, the "completely innocent" exception to *D'Oench* articulated in *Federal Deposit Ins. Corp. v. Meo,* 505 F.2d 790, 793 (9th Cir.1974), would be appropriate in this case. *See also Langley v. Federal Deposit Ins. Corp.,* 484 U.S. 86, 93–95, 108 S.Ct. 396, 402–03, 98 L.Ed.2d 340 (1987) ("fraud in the factum" exception to the *D'Oench* doctrine). The RTC has essentially agreed that Agri Export is completely innocent of wrongdoing with regard to the letter of credit. One would hardly expect a bank customer to do more than the Agri Export did to assure that the letter of credit issued by Universal was valid, particularly in light of the fact that the underlying loan was made to a subsidiary of Universal Savings.

*12 U.S.C. Section 1823(e)*

■ The Federal Deposit Insurance Act was amended in 1950 to include a provision which has been called an "essential" or

"partial" codification of the *D'Oench* doctrine. *Bowen*, 915 F.2d at 1015; *Vernon*, 907 F.2d at 1105:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the corporation unless such agreement—(1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board meeting or committee, and (4) has been, continuously, from the time of it's execution, an official record of the depository institution.

12 U.S.C. § 1823(e).

By it's plain language, § 1823(e) applies only to an interest in "any asset", with the agreement in writing executed contemporaneously with the financial institution obtaining "the asset". Universal Savings did not acquire a particular, identifiable asset from Agri Export. Rather, it merely received consideration at the time the letter was executed. The RTC nonetheless contends that section 1823(e) should shield the insuring entity from any types of claims against the failed financial institution, whether or not related to any particular asset, which do not meet the recording requirements of the statute—in other words, should apply to any claim against "the assets" of the corporation.

It is well settled that if the insuring institution acquires no "right, title or interest" in an asset that claims and defenses could "diminish or defeat", then sec. 1823(e) does not apply. *Grubb v. Federal Deposit Ins. Corp.*, 868 F.2d 1151 (10th Cir.1989). *See also Federal Deposit Ins. Corp. v. Merchants Nat'l Bank*, 725 F.2d 634, 639 (11th Cir.), *cert. denied* 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984) (section 1823(e) does not apply when "the

parties contend that no asset exists or an asset is invalid and that such invalidity is cause by act independent of any understanding or side agreement"); *Commerce Federal Sav. Bank v. Federal Deposit Ins. Corp.*, 872 F.2d 1240 (6th Cir.1989) (section 1823(e) applies only to an action or defense which is anchored in an agreement separate and collateral from the instrument which the FDIC is seeking to enforce).

The statute's meaning is clear. The construction of section 1823(e) proposed by the defendant, that is, as an impermeable barrier to any claim or defense asserted against the RTC, is not supported by the statute, its history, or persuasive case law. As the Ninth Circuit explained, "In our judgement it could not have been the Congressional intent, upon balance, to have the fiscal integrity of the deposit insurance fund (which can be adequately protected by other more equitable means) outweigh the policy of equitable and ratable payment of creditors ... or permit the FDIC, whenever it felt its actions to be reasonable and to serve to protect the deposit insurance fund against loss, to prefer some creditors over others." *First Empire Bank v. Federal Deposit Ins. Corp.*, 572 F.2d 1361 (9th Cir.), *cert. denied* 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978), *cert. denied* 452 U.S. 906, 101 S.Ct. 3032, 69 L.Ed.2d 406 (1981).

What the RTC and Universal Savings want is not a construction of a statute, but, in effect, an enlargement of it. The RTC urges expanding the scope of section 1823(e) in order to promote the goals of both *D'Oench* and 12 U.S.C. 1823(e)—that of protecting the publicly financed deposit insurance system. However, "[n]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objectives must be the law." *Rodriguez v. United States*, 480 U.S. 522, 525–526, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987). It is a frequently stated principle of statutory construction that

when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. *Cheek v. United States,* —— U.S. ——, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). If the intent of Congress is clear, that is the end of the matter. *Pension Benefit Guaranty Corp. v. LTV Corp.,* —— U.S. ——, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990).

If *D'Oench* and section 1823(e) were to be applied as suggested by the RTC, liability on any obligation (except, perhaps, insured deposits) not meeting the section 1823(e) requirements could be avoided. Would it be in the public interest if bank customers could not be sure of the validity of their transactions with banks? Would the RTC have boards of directors operating *en banc* as tellers, approving and contemporaneously recording each and every bank transaction, in order for these transactions to be excepted from *D'Oench* and section 1823(e)?

The RTC claims that, since section 1823(e) represents a codification of *D'Oench,* the statutory requirements concerning the recording and approval of the transaction should be utilized when analyzing the circumstances of this case under *D'Oench.* Courts have indeed employed the analysis used in decisions under section 1823(e) as a guide to *D'Oench* interpretation. The Fifth Circuit has held, however, that *D'Oench* and section 1823(e) are not identical. *Federal Deposit Ins. Corp. v. McClanahan,* 795 F.2d 512, 514 (5th Cir. 1986) ("it has not been suggested that the enactment of 1823(e) in 1950, as amended to the Federal Deposit Insurance Act, preempted the common law rule of *D'Oench, Duhme.* The discussion of the amendment in the legislative history does not mention *D'Oench, Duhme* ..."). While the statute expands *D'Oench* in that it applies to any agreement, whether or not it was "secret", and regardless of the makers participation in a scheme, the statute is also narrower than *D'Oench* in that it applies only to agreements, and not to other defenses. The Court cannot allow Universal Savings and the Resolution Trust Corporation to pick and choose elements from both section 1823(e) and *D'Oench,* utilizing the favorable ones, and discarding the others, to synthesize a new rule of law.

The letter of credit was not an asset of Universal Savings. It became an unqualified promise to pay upon proper presentment. Agri Export Cooperative has proved that a valid letter of credit was properly presented to Universal Savings, and the RTC as receiver for Universal Savings has not demonstrated a ground for avoiding liability on the letter of credit. Based upon this evidence, the Court concludes that the plaintiffs are entitled to relief. Judgment shall be entered in favor Agri Export Cooperative and Bankers Trust Company.