Thomas J. BEENER and The Clarion
Securities Group Incorporated,
Plaintiffs,

v.

Anthony J. LaSALA, Alexandria Associates, Ltd., LaSala Management, Inc.,
Mitchell Equities, Armay Equities, Inc.,
The Mitchell Company, and John Does,
1st Through 10th, Defendants.

Anthony J. LaSALA, Alexandria Associates, Ltd., LaSala Management, Inc.,
Mitchell Equities, Armay Equities, Inc.,
Third Party Plaintiffs,

v.

Ronald ORR, d/b/a Orr Associates,
Third Party Defendants.

Civ. A. No. 91–1570.

United States District Court,
D. New Jersey.

Feb. 5, 1993.

McCarter & English, Newark, NJ, David R. Kott, Robert K. Gunn, for defendants Mitchell Equities, Armay Equities, Inc. and The Mitchell Co.

Sposaro, Coppel & Laughlin, P.C., Chester, NJ, James Laughlin, III, for plaintiffs.

HAROLD A. ACKERMAN, District Judge:

In this action, plaintiffs Thomas J. Beener ("Beener") and The Clarion Securities Group Incorporated ("Clarion") seek compensation for services they rendered in connection with the sale of partnership interests in a limited partnership. Before me now is the motion of defendants The Mitchell Company, Mitchell Equities, and Armay Equities, Inc. (collectively, the "Mitchell Defendants") for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the following reasons, defendants' motion is denied.

I. Factual Background

The following facts are undisputed except where otherwise indicated.

In 1986, defendant The Mitchell Company agreed to sell four properties to Anthony J. LaSala ("LaSala"). For the purpose of purchasing these properties, LaSala was to use Alexandria Associates, Ltd. ("Alexandria"), a Florida limited partnership, as the purchasing entity. Alexandria was originally formed by The Mitchell Company in 1985; defendant Mitchell Equities was Alexandria's sole general partner. On December 9, 1986, an amendment to Alexandria's Certificate of Limited Partnership was executed by LaSala, both individually and on behalf of LaSala Management, Inc. ("LaSala Management"), and by Mitchell Equities. The Amendment to the Certificate provided that LaSala and LaSala Management were to become the general partners of Alexandria and that Mitchell Equities was to withdraw as the general partner of Alexandria. Due to circumstances not relevant to this motion, however, Mitchell Equities' withdrawal from Alexandria was delayed. As a result, the amendment to the certificate was not filed with the Secretary of State for the State of Florida until December 24, 1987, over one year later.

In the meantime, in the fall of 1986, plaintiffs Beener and Clarion were retained to provide various services, including the preparation of a Private Placement Memorandum for the syndication of partnership interests in Alexandria. In December 1986, LaSala signed a Soliciting Dealer Agreement ("Agreement") with Clarion, as a "general partner" of Alexandria, and purportedly on its behalf. Pursuant to this Agreement, Clarion was to sell partnership interests in Alexandria to investors. The parties dispute the extent to which the Mitchell Defendants were involved in the preparation of the private placement memorandum and the extent of their knowledge of the undertakings and obligations of Alexandria during this time.

In their Complaint, plaintiffs seek, *inter alia*, brokerage commissions and expense reimbursements allegedly owing under the Soliciting Dealer Agreement. The Complaint alleges that defendant Mitchell Equities is liable as a general partner of Alexandria. The Complaint further alleges that The Mitchell Company and Armay Equities,

Inc. are liable under the Agreement in that the Mitchell Company is the parent and/or affiliate of Mitchell Equities and that Armay Equities was the general partner of Mitchell Equities.

An understanding of the rather complex relationships among certain of the parties in this case is necessary for the determination of this motion. Defendant The Mitchell Company is an Alabama general partnership. The partners of The Mitchell Company are three corporations: Armay Development Corporation, Marbit Incorporated, and Luco Development, Inc. The stock of all three corporations is owned by Altus Real Estate Services, Inc. ("Altus Real Estate").

Defendant Mitchell Equities is a Florida general partnership. The partners of Mitchell Equities are, *inter alia*, Marbit Equities, Inc., Luco Equities, and defendant Armay Equities, Inc. The stock of these three corporations is also owned by Altus Real Estate.

The stock of Altus Real Estate, in turn, was owned by Altus Bank, a federal savings bank. On May 16, 1991, Altus Bank went into receivership and the Resolution Trust Company ("RTC") was appointed as the bank's receiver. The RTC established a new thrift, Altus Federal Savings Bank, with the RTC as its conservator. The Altus Federal Savings Bank acquired certain assets and liabilities of Altus Bank, including Altus Real Estate. It is this state of affairs that gives rise to the legal issue presented on this motion for summary judgment.

## II. Discussion

The sole issue raised by the Mitchell defendants' summary judgment motion is whether plaintiffs' claims are barred as to them by the *D'Oench* doctrine enunciated by the United States Supreme Court in *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), as well as its statutory counterpart, 12 U.S.C. § 1823(e).

### A. Standard for Summary Judgment

Summary judgment may be granted only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir.1989); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.), *cert. dism'd*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Put differently, "summary judgment may be granted if the movant shows that there exists no genuine issues of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hospital*, 843 F.2d 139, 143 (3d Cir.), *cert. denied*, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A fact is material if it influences the outcome under the governing law. *Id.* at 248, 106 S.Ct. at 2510.

Within the framework set out above, the moving party essentially bears two burdens. First, there is the burden of production, of making a prima facie showing that it is entitled to summary judgment. This may be done either by demonstrating that there is no genuine issue of fact and that as a matter of law, the moving party must prevail, or by demonstrating that the nonmoving party has not shown facts relating to an essential element of the issue for which it bears the burden. Once either showing is made, this burden shifts to the nonmoving party who must demonstrate facts supporting each element for which it bears the burden as well as establish the existence of genuine issues of material fact. Second, there is the burden of persuasion. This burden is a stringent one which always remains with the moving party. If there remains any doubt as to whether a trial is necessary, summary judgment should not be granted.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 330–33, 106 S.Ct. 2548, 2556–58, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–61, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970); Advisory Committee's Notes on Fed.R.Civ.P. 56(e), 1963 Amendment; *see generally* 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727 (2d ed. 1983).

### B. *D'Oench Doctrine and 12 U.S.C. § 1823(e)*

As noted above, the sole issue raised by defendants' summary judgment motion is whether plaintiffs' claims are barred as to them by the *D'Oench* doctrine and 12 U.S.C. § 1823(e).

In *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, the United States Supreme Court set forth the federal common law doctrine which protects bank insurers from the enforcement of secret agreements entered into between a borrower and a bank. 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In *D'Oench*, the defendant executed promissory notes payable to the bank with the understanding that the bank would never collect on the notes. After the bank failed, the FDIC acquired the notes through a purchase and assumption transaction and attempted to enforce them against the notemaker. The notemaker asserted failure of consideration as a defense based on the undisclosed agreement that the notes would not be called for payment.

The Supreme Court held that there is a federal policy to protect bank insurers, such as the FDIC, against misrepresentations about the assets of a bank. 315 U.S. at 457, 62 S.Ct. at 679. Based on this policy, the notemaker was estopped from raising its secret agreement with the bank as a defense to the enforcement of the notes. *Id.* at 461, 62 S.Ct. at 681. In so holding, the Court set forth the following test:

> The test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled.

*Id.* at 460, 62 S.Ct. at 681.[1]

The purpose underlying the *D'Oench* doctrine was elaborated upon by the Supreme Court in *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). The Court stated that the purpose is:

> to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Such evaluations are necessary when ... the FDIC is deciding whether to liquidate a failed bank or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank. The last kind of evaluation, in particular, must be made "with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.

*Id.* at 91–92, 108 S.Ct. at 401 (*quoting Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982)).[2]

The rule emerging from *D'Oench* is that no agreement between a borrower and a bank that does not clearly appear on the face of an obligation or in the bank's offi-

---

**1.** The *D'Oench* doctrine does not require a showing that the borrower had the intent to defraud. *Timberland Design, Inc. v. First Service Bank for Sav.*, 932 F.2d 46, 48 (1st Cir. 1991). Rather, it is enough if the borrower "lent himself to a scheme or arrangement" likely to mislead banking authorities. *D'Oench*, 315 U.S. at 460, 62 S.Ct. at 681.

**2.** The *D'Oench* doctrine has been held to apply to the RTC. *Adams v. Madison Realty & Development, Inc.*, 937 F.2d 845, 852 (3d Cir.1991); 12 U.S.C. § 1441(a)(b)(4) (giving RTC same "powers and rights to carry out its duties" given to FDIC under 12 U.S.C. § 1823).

cial records is enforceable against the FDIC. *Adams v. Madison Realty & Development, Inc.*, 937 F.2d 845, 852 (3d Cir. 1991).

▮ The Federal Deposit Insurance Act of 1950, § 2[13](e), as amended, 12 U.S.C. § 1823(e) (1989), essentially codifies *D'Oench*. That section provides:

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e).[3]

Defendants contend that plaintiffs' claims under the Solicitor Dealer Agreement are barred by both the *D'Oench* doctrine and 12 U.S.C. § 1823(e) because they are based upon alleged unwritten, "secret" side agreements with the Mitchell defendants. Specifically, defendants argue that they never executed any agreement with the plaintiffs, and that Mr. LaSala was never authorized to execute the Soliciting Dealer Agreement or any other agreement on their behalf. Defendants contend that

because LaSala was not legally a general partner of Alexandria at the time the Agreement was executed, he had no authority to bind the partners of Alexandria. Defendants seem to draw two conclusions from these contentions: 1) since plaintiffs' claims are based on an agreement not executed by defendants and not authorized by defendants, any agreement to pay plaintiffs' commissions and fees was based on an oral or side agreement; 2) "To the extent that it is alleged that the Mitchell Defendants authorized Mr. LaSala to bind them in any way, those allegations are based upon alleged oral representations and 'secret' agreements." Defendants' Memorandum of Law at 6.

The defendants further argues that *D'Oench* and Section 1823(e) apply here because they are wholly-owned subsidiaries of Altus Bank, and as such, they are the assets of Altus Bank. Defendants contend that since they are assets that have been taken over by the RTC, such assets would be impermissibly diminished under *D'Oench* and Section 1823(e) should plaintiffs be permitted to pursue their claims against the Mitchell defendants.

Plaintiffs argue that there are sufficient writings to satisfy *D'Oench* and Section 1823(e) which support their claims against the Mitchell defendants. Specifically, they assert that writings exist which demonstrate that Mitchell Equities and the LaSala defendants held themselves out as general partners of Alexandria, rendering them liable under the alleged agreement to pay plaintiffs' commissions and fees.

▮ The primary issue thus addressed by both parties is whether there is a writing meeting the requirements of *D'Oench* and 12 U.S.C. § 1823(e) as to the Mitchell defendants. A threshold inquiry, however, is whether the *D'Oench* doctrine and Sec-

---

**3.** Although the *D'Oench* doctrine and Section 1823(e) are generally applied co-extensively, there are differences between the two. Section 1823(e) specifically applies to "agreements" between the borrower and the bank. In contrast, the *D'Oench* doctrine is a rule of equitable estoppel and applies to any defense that a borrower may assert where the borrower participated in a scheme tending to deceive bank examiners.

*Tuxedo Beach Club Corp. v. City Federal Sav. Bank*, 749 F.Supp. 635, 642 (D.N.J.1990). Thus, Section 1823 is broader than *D'Oench* in that "it applies to *any* agreement, whether or not it was secret and regardless of the maker's participation in a scheme; it is narrower in that it applies *only* to agreements, and not to defenses the borrower might raise." *Id.*

tion 1823(e) apply *at all* to the alleged agreement at issue in this case. I will now turn to this issue.

The scope of *D'Oench* and Section 1823(e) have been expanded dramatically by the courts. Thus, for example, it is generally held that the *D'Oench* doctrine applies to bar both defenses and affirmative claims for relief. *Timberland Design, Inc. v. First Service Bank for Sav.*, 932 F.2d 46, 49 (1st Cir.1991); *Chatham Ventures, Inc. v. Federal Deposit Ins. Corp.*, 651 F.2d 355, 359 (5th Cir.1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). Moreover, the *D'Oench* doctrine and Section 1823(e) have been held applicable to subsidiaries of failed banking institutions. *See, e.g., Victor Hotel Corp. v. FCA Mortgage Co.*, 928 F.2d 1077, 1083 (11th Cir.1991); *Oliver v. Resolution Trust Corporation,* 747 F.Supp. 1351 (E.D.Mo.1990), *aff'd,* 955 F.2d 583 (8th Cir.1992).[4] Similarly, *D'Oench* and Section 1823(e) have been applied to bar various types of claims such as violations of federal securities laws, RICO, common law fraud and misrepresentation. *Vernon v. Resolution Trust Corporation,* 907 F.2d 1101, 1107 (11th Cir.1990). However, as several courts have recognized, *D'Oench* and Section 1823(e) do not bar every claim based on an oral agreement.

In *Vernon v. Resolution Trust Corp.*, shareholders of a defunct savings and loan institution brought claims against the institution under federal and state securities laws, RICO, and common law fraud. 907 F.2d 1101. The Eleventh Circuit found that these claims were not barred by *D'Oench* and section 1823(e). In so holding, it distinguished the case before it from almost every other *D'Oench* case as follows:

The case we review today differs, however, in one important respect from all the ... *D'Oench* doctrine cases this court

has examined. In every *D'Oench* doctrine case save one, the FDIC, the FSLIC, or some successor in interest asserted or defended the validity and enforceability of a particular debt or monetary obligation owed to the failed bank, be it a promissory note, a mortgage, a letter of credit or personal guaranty or collateral pledge agreement securing a loan, rental payments under a lease, or a refund provision in an insurance contract. Appellants are not obligees [sic] trying to avoid their commitment on an asset which [the new institution] acquired via a purchase and assumption agreement.

*Id.* at 1107. (footnote omitted).[5] Thus the Court observed that the *D'Oench* doctrine applies in situations involving a specific debt or monetary obligation, such as a promissory note, owing to the banking institution.

The Court also observed that in the case before it, the plaintiffs were seeking compensation for their alleged damages from the general assets of the successor bank. The Court refused to extend the *D'Oench* doctrine to preserve the general assets acquired by a federal insurer or its successor "from all claims tending to diminish those assets, save those claims clearly supported by the records of the insolvent bank." *Id.* at 1108. The Court noted that when a federal insurer is appointed a receiver of a failed banking institution, it takes over the assets as well as the liabilities of the failed bank. Pursuant to 12 U.S.C. § 1729(d), when an insurer chooses to liquidate a failed bank, it has the power to "collect all obligations" owing to the institution, and is protected by *D'Oench* in collecting those obligations. *Id.* At the same time, the insurer must "settle, compromise or release claims in favor of or against" the defunct bank. 12 U.S.C. § 1729(b)(1)(B), (d). These provisions empower a federal

---

4. Plaintiffs contend that no case has applied the *D'Oench* doctrine to the particular facts presented in this case, that is, third generation subsidiaries. However, my disposition of this case obviates the need to consider whether *D'Oench* should be extended to third generation subsidiaries.

5. The only exception cited by the court in *Vernon* was *Belsky v. First Nat'l Life Ins. Co.*, 653 F.Supp. 80 (D.Neb.1986), *aff'd,* 818 F.2d 661 (8th Cir.1987), which involved a claim for benefits under an insurance program.

insurer to pay claims proved to the insurer's satisfaction and permit claimants to bring suit to have a court determine the validity of their claims. *Id.* (*citing Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp.*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989)). The Court therefore concluded that the broad rule proposed by plaintiffs "would bar such claims from being successfully asserted when Congress has provided that such claims be paid." *Id.*

The reasoning of the Eleventh Circuit has been applied by other courts. For example, in *Agri Export Co-op. v. Universal Sav. Ass'n*, 767 F.Supp. 824, 832 (S.D.Tex. 1991), the court held that *D'Oench* and Section 1823 did not apply to a letter of credit where the letter of credit was an obligation of the failed institution, rather than an asset of the institution. The Court reasoned that "*D'Oench* is typically employed in instances where a side agreement is inextricably entwined with a loan or other asset of the financial institution." *Id.* In contrast, the letter of credit was a "rather straight-forward obligation of the bank" and therefore was not in the purview of *D'Oench*. *Id.; see also First Financial Sav. Bank, Inc. v. American Bankers Ins. Co. of Florida, Inc.*, 783 F.Supp. 963, 967–68 (E.D.N.C.1991) (*D'Oench* and Section 1283(e) do not apply to bar affirmative defense where party was not seeking to diminish or avoid liability on a debt instrument or other obligation owed to bank).

Finally, dicta in a Third Circuit opinion suggests that the above analysis is correct. In *Federal Deposit Ins. Corp. v. Blue Rock Shopping Center, Inc.*, the Third Circuit stated that *D'Oench* and Section 1823(e) were not intended to encompass agreements as "remote" as an agreement between a principal and a surety, even though the agreement might affect the ultimate liability to the FDIC of an accommodation maker on a note. 766 F.2d 744, 754 (3d Cir.1985). Rather, "Section 1823(e) is directed at agreements between a bank and its obligor showing or attempting to show that the obligation was illusory or conditional." *Id.*

I find the reasoning of these cases persuasive and sound, and applicable to the case at bar. Plaintiffs here are seeking to enforce an alleged agreement to pay brokerage commissions and fees for services rendered in connection with the offering of partnership interests in Alexandria. Thus, this is not a case involving the "validity and enforceability of a particular debt or monetary obligation owed to [a] failed bank." *Vernon*, 907 F.2d at 1107. In other words, defendants are not obligors trying to diminish or avoid their liability on a debt or other obligation owing to the bank. Rather, plaintiffs are merely seeking to enforce a straightforward obligation allegedly owed *by* the failed bank's third-generation subsidiary. *See Agri* 767 F.Supp. at 832 (*D'Oench* should not be applied when the agreement sought to be avoided "is what might be characterized as a pure obligation of the failed bank or savings and loan association."). There was no "secret" or "side" agreement here of the sort described in *D'Oench*, intended to mislead banking authorities. An alleged agreement does not become "secret" merely because it is not in writing and not contained in the bank's records. *Id.* In short, *D'Oench* simply does not apply.

Moreover, here, defendants are trying to avoid liability on an obligation that is not connected with a particular asset of the failed institution. *D'Oench*, however, is generally applicable only where a side agreement is inextricably entwined with a particular loan or other asset of the financial institution. *Id.* Similarly, Section 1823(e) applies "only to an interest in 'any asset', with the agreement in writing executed contemporaneously with the financial institution obtaining 'the asset.'" *Id.* Although defendants argue that *D'Oench* applies to claims based on any unrecorded agreement that would diminish the general assets of a bank, I find the better view to be that *D'Oench* does not shield all the assets of a failed institution from claims based on unrecorded agreements. *See Vernon*, 907 F.2d at 1107; *see also First Financial*, 783 F.Supp. at 967 (adopting view that "the *D'Oench* doctrine and 12 U.S.C. § 1823(e) do not preclude a party

from obtaining compensation from the general assets of a failed financial institution controlled by the FDIC as receiver, but instead, only bar defenses and claims which would diminish the value of a particular record asset held by the FDIC, such as a note or mortgage."); *Agri,* 767 F.Supp. at 832 ("The construction of section 1823(e) proposed by the defendant, that is, as an impermeable barrier to any claim or defense asserted against the RTC, is not supported by the statute, its history, or persuasive case law.").

If *D'Oench* and Section 1823(e) were to be applied as expansively as defendants urge, liability on all obligations of the failed institution, as well as obligations of all the institution's subsidiaries, not meeting the requirements of *D'Oench* or Section 1823(e) could be avoided. This was not the result intended by *D'Oench* and Section 1823(e).

There is no dispute as to the nature of the claims asserted in this action. I therefore find as a matter of law that neither *D'Oench* nor Section 1823(e) is a bar to the claims asserted against the Mitchell Defendants. Accordingly, defendants' motion for summary judgment is denied.

### Conclusion

For the foregoing reasons, defendants' summary judgment motion is denied.